# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| SPIRIT COMMERCIAL AUTO RISK RETENTION GROUP, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:15CV01091 ERW |
| MIKE KAILEY dba KAILEY TRUCK LINES, VIKRAM SHAH, and LISA VASQUEZ KAILEY, | ) ) ) ) ) | |
| Defendants. | | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Mike Kailey's Motion to Dismiss the Complaint or, in the Alternative, to Transfer Venue to the District of Nevada ("Motion to Dismiss") [ECF No. 21].

## I. BACKGROUND

Plaintiff Spirit Commercial Auto Risk Retention Group, Inc. ("Plaintiff") filed its Complaint for Declaratory Judgment ("Complaint") with the Court on July 14, 2015. On October 25, 2015, Defendant Mike Kailey d/b/a Kailey Truck Lines ("Defendant Kailey") filed the instant Motion to Dismiss on the basis of Rule 12(b)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1332(a)(1), claiming this Court lacks subject matter jurisdiction based on a lack of diversity of citizenship. Alternatively, Defendant Kailey prays for transfer to the District Court of Nevada pursuant to 28 U.S.C. § 1404(a) on the basis Nevada provides a more convenient forum to Defendant Kailey, a sole proprietor. Likewise, Defendant Kailey alleges that the appropriate choice-of-law for the interpretation of the Policy is Nevada law. To the contrary, Plaintiff asserts Missouri law, or alternatively California law should apply.

1

Plaintiff's Complaint seeks declaratory judgment that the death of Gurpreet Kailey, who was killed when a commercial truck, owned by Defendant Kailey and driven by Vikram Shah, rolled over on I-44, falls within the exclusions of the Automobile Liability Insurance Policy numbered CAC0001201402CA ("Policy") issued to Defendant Kailey by Plaintiff. Accordingly, Plaintiff's Complaint asserts Plaintiff is not obligated to indemnify nor defend Defendant Kailey in the underlying negligence cause of action, filed in this Court, against Defendant Kailey in relation to the death of Gurpreet Kailey.

The Policy at issue in this suit was issued to Defendant Kailey, effective March 21, 2014, and lists 13150 Long Meadow St. Hesperia, California 92344 as Defendant Kailey's address. [ECF No. 1, Ex. B, at SPIR 003]. Defendant Kailey does not challenge the Policy, incorporated into Plaintiff's Complaint, is the agreement the parties executed. Plaintiff alleges, at all times relevant to its declaratory judgment suit, Defendant was a resident of California. Likewise, Plaintiff has submitted a copy of Defendant Kailey's motor carrier registration listing an address for Defendant Kailey identical to that used for purposes of the Policy. [ECF No. 25, Ex. A].

It is uncontested Plaintiff is registered as a Nevada domestic corporation and is a citizen of Nevada. [ECF No. 21, Ex. A]. Defendant Kailey contests he is a California citizen, and has provided a declaration stating he is a thirty- year resident of Clark County, Nevada. [ECF No. 21, Ex. B]. Defendant Kailey further asserts that while he maintains a temporary office in Hesperia, California, he transacts the majority of his business in Nevada. *Id.*

## II.   LEGAL STANDARD

A party may move to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011). "Motions to dismiss for lack of subject-matter jurisdiction can be decided three ways: at the pleading stage,

like a Rule 12(b)(6) motion; on undisputed facts, as with a summary judgment motion; and on disputed facts." *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008). "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).

In a factual attack, "the existence of subject matter jurisdiction [is challenged] in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered . . . Thus, the nonmoving party would not enjoy the benefit of the allegations in its pleadings being accepted as true by the reviewing court[.] . . ." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914-15 (8th Cir. 2015). The court may receive competent evidence such as affidavits and deposition testimony in order to determine the factual dispute. *Titus*, 4 F.3d at 593.

The existence of subject matter jurisdiction is a question of law appropriate for the Court. *ABF Freight Syst., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). A district court has broad power in deciding whether it has the right to hear a case. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). "Moreover, because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial[.]" *Id.*

## III. DISCUSSION

### A. *Subject Matter Jurisdiction—Diversity of Citizenship*

Defendant Kailey argues diversity of citizenship is not complete, and subject matter jurisdiction is lacking, because both he and Plaintiff are Nevada citizens. While the parties do not dispute Plaintiff is a Nevada citizen, Plaintiff's Complaint alleges Defendant Kailey is a

California citizen. Based on the record, and the exhibits this Court may consider, the Court finds Defendant Kailey is a California citizen.

1. Plaintiff Spirit's Burden to Establish Jurisdiction

Plaintiff, as the party seeking the federal forum, has the burden of establishing jurisdiction by a preponderance of the evidence. *Blakemore v. Mo. Pac. R.R.,* 789 F.2d 616, 618 (8th Cir.1986); *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990). "[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373 (1978) (emphasis original); *Yeldell*, 913 F.2d at 537. "The existence of diversity of citizenship is determined at the time the suit is instituted, and not when the cause of action arose." *Yeldell*, 913 F.2d at 537; *see Smith v. Snerling,* 354 U.S. 91, 93 n.1 (1957); *Blakemore,* 789 F.2d at 618. "A determination of citizenship for the purpose of diversity is a mixed question of law and fact, but mainly fact." *Blakemore*, 789 F.2d at 618.

2. Domicile

The determinative issue with regard to Defendant Kailey's citizenship for purposes of diversity is the location of Defendant Kailey's domicile. "[O]ne may have only one domicile at a time and a domicile once established persists until a new one is acquired. (citations omitted). Once acquired, it is presumed to continue until it is shown to have been changed." *Janzen v. Goos*, 302 F.2d 421, 425 (8th Cir. 1962).

> To acquire a domicil[e] of choice, the law requires the physical presence of a person at the place of the domicil[e] claimed, coupled with the intention of making it his present home. When these two facts concur, the change in domicil[e] is instantaneous. Intention to live permanently at the claimed domicil[e] is not required. If a person capable of making his choice honestly regards a place as his present home, the motive prompting him is immaterial.

*Janzen*, 302 F.2d at 425 (quoting *Spurgeon v. Mission State Bank*, 151 F.2d 702, 705-06 (8th Cir. 1945)). "State citizenship, for diversity purpose[s], requires an individual's physical presence

in the state coupled with an indefinite intention there to remain." *Blakemore,* 789 F.2d at 618; *Holmes v. Sopuch,* 639 F.2d 431, 433 (8th Cir. 1981).

Although Plaintiff has the burden of establishing subject matter jurisdiction, the Court finds Plaintiff has met this burden, and Defendant Kailey has provided the Court with no evidence to rebut he is a citizen of California. The record before the Court contains no compelling evidence of Defendant Kailey's physical presence in Nevada from which the Court could find Defendant Kailey's domicile is Nevada. In determining citizenship for the purpose of diversity, the Court is not required to believe an interested witness' uncontradicted testimony. *Janzen*, 302 F.2d at 427. Concluding there is a lack of sufficient evidence of Defendant Kailey's physical presence in Nevada, the Court notes Defendant Kailey's Exhibit B, "Declaration of Mike Kailey," is an unsworn statement which states Defendant Kailey is a thirty-year resident of Clark County, Nevada. [ECF No. 21, Ex. B]. Conspicuously absent from this statement is Defendant Kailey's Nevada address, a copy of a driver's license, anything showing Nevada is the principal base of operations for Kailey Truck Lines, or any other indicia of reliability to make Defendant Kailey's challenge to citizenship colorable. While Defendant Kailey is under no obligation to provide proof of his alleged Nevada residency, his failure to do so, in light of the evidence Plaintiff has provided in support of its burden to prove subject matter jurisdiction, is fatal.

Plaintiff has provided two documents: the Policy at issue in Plaintiff's suit for declaratory judgment [ECF No. 1, Ex. B], and Defendant Kailey's Motor Carrier Registration [ECF No. 25, Ex. A], each of which lists 13150 Long Meadow Street, Hesperia, California, 92344 as Defendant Kailey's address. Defendant Kailey admits having a temporary office in Hesperia, California. Accordingly, the Court finds Defendant Kailey has established a physical

5

presence in Hesperia, California. *See Spurgeon*, 151 F.2d at 705-06 (mandating domicile test requires physical presence). In consideration of Defendant Kailey's ongoing use of his California address on all documents relating to Kailey Truck Lines, and Defendant Kailey's lack of a Nevada address anywhere in the record to rebut the evidence provided by Plaintiff, this Court finds sufficient evidence to conclude Defendant Kailey has demonstrated his intent to make his home, or otherwise, to remain indefinitely, in Hesperia, California. *See, e.g., Mitchell v. United States*, 88 U.S. 350, 353 (1874) (concluding a place of business is evidence from which intent to make one's home in the state, for purposes of domicile, may be presumed). Accordingly, Defendant Kailey's state of domicile is California.

"It has long been held that, for purposes of determining diversity of citizenship, the controlling consideration is the domicile of the individual." *Jones v. Hadican*, 552 F.2d 249, 250 (8th Cir. 1977). Because Defendant Kailey is a citizen of California, and Plaintiff is a Nevada citizen, the Court concludes it has subject-matter jurisdiction over this case on the basis of complete diversity between the parties.

    *B.*    *Applicable State Law*

The next issue raised by Defendant Kailey's Motion to Dismiss is the choice-of-law that must be applied to the resolution of Plaintiff's declaratory judgment action. Defendant Kailey maintains Nevada law applies to the interpretation of the Policy. The Court finds no choice-of-law clause in the Policy; therefore, the Court must apply choice-of-law rules. Plaintiff maintains Missouri law, on the basis of the Policy's formation, or alternatively California law, should apply to the interpretation of the Policy in Plaintiff's declaratory judgment action. For the reasons discussed herein, the Court finds the application of California law is proper.

"We apply the choice-of-law rules of the forum state in a diversity action." *John T. Jones Const. Co. v. Hoot Gen. Const. Co.*, 613 F.3d 778, 782 (8th Cir. 2010); *Cicle v. Chase Bank USA,* 583 F.3d 549, 553 (8th Cir. 2009); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1123 (8th Cir. 2012). Here, because there is no choice of law clause to be found in the Policy, Missouri choice-of-law rules must be applied in order to determine the applicable law in this case.

"Missouri choice of law rules follow the 'most significant relationship' test of the Restatement (Second) of Conflicts of Laws, Section 188." *Superior Equip. Co. v. Md. Cas. Co.*, 986 S.W.2d 477, 480 (Mo. Ct. App. 1998). The "most significant relationship" test requires the Court to examine the following factors to determine which state bears the most significant relationship to Plaintiff's declaratory judgment action: "(a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* at 480-81. Missouri courts do not apply these factors by counting the factors for a bare majority, but instead evaluate the contacts based on their relative importance to the particular issue before the court. *Dillard v. Shaughnessy, Fickel & Scott Architects, Inc.*, 943 S.W.2d 711, 715 (Mo. Ct. App. 1997). Certain factors may be entitled to more weight. *Id.*

Considering only the record, the place of contracting memorialized in the Policy is 611 W. Fort Scott Street, Suite D., Butler, Missouri 64730 [ECF No. 1, Ex. B at SPIR 006-7]. While Plaintiff maintains the Policy was negotiated in Butler, Missouri, where it was signed, Defendant Kailey has also alleged he was solicited by an agent of Plaintiff in the State of Nevada. There is no dispositive evidence in the record that would suggest the Policy was negotiated in either state, rather than by long-distance negotiation. Thus, the Court finds the contract was negotiated in both Missouri and Nevada. It is less clear where the place of performance is with respect to an

7

insurance policy for a motor carrier operating cross-country. In confronting these issues, the Court finds it necessary to turn to Missouri case law applying Restatement Section 188.

With respect to applying Missouri's choice-of-law rules in a vehicle insurance context involving multiple states, the Missouri Court of Appeals, Western District case *Accurso v. Amco Insurance Company*, 295 S.W.3d 548 (Mo. Ct. App. 2009) is dispositive. In *Accurso*, an estranged wife who lived in Kansas, was hit by an underinsured motorist in Missouri, and had coverage under two policies: 1) an Amco policy that listed the principal address on the policy as the husband's Missouri law office, with a secondary garaging location for three of the vehicles at wife's Kansas address; and 2) a policy through Mount Vernon for which the husband had switched the primary address on the policy to his new Missouri home. *Id.* at 549-50. Although the insured drivers all had Kansas driver's licenses, all vehicles on the policies had recently had their registration switched to Missouri prior to wife's accident. *Id.* at 550. For purposes of choice-of-law, the *Accurso* court gave varying weight to the factors in Restatement 188:

> If the parties negotiate a contract remotely and no single place of negotiation and agreement exists, the place of the negotiation is less important. . . Likewise, the place of performance in this case is uncertain because the parties did not know where future law suits would be brought. [] "[T]he place of performance can bear little weight in the choice of the applicable law when ... at the time of contracting it is either uncertain or unknown. . ." Moreover, the location of the subject matter of the contract in this case is less certain because the contract does not deal with "a specific physical thing," nor does it "afford protection against a localized risk . . ."

*Accurso*, 295 S.W.3d at 553.

The *Accurso* court concluded, because Missouri was the principal address listed as the location of the insured risk under both the Amco and Mount Vernon policies prior to the accident, and because the vehicles were also registered in Missouri, those factors weighed most heavily in favor of finding Missouri law was the most appropriate choice-of-law. *Id.* at 553-54.

8

Other cases pertaining to Missouri choice-of-law rules concur "[i]n cases involving . . . casualty insurance . . . the most important factor is the state which the parties contemplated as the principal location of the insured risk." *Superior Equip. Co.*, 986 S.W.2d at 480-81; *Hartzler v. Am. Family Mut. Ins. Co.,* 881 S.W.2d 653, 655 (Mo. App. 1994). "[T]he principal location of the insured risk [is] 'the state where [the vehicle(s)] will be during at least the major portion of the insurance period' and . . . in [] [cases] of an automobile liability policy, 'it is where the vehicle will be garaged during most of the period.'" *Accurso*, 295 S.W.3d at 551-52.

In this case, where the motor carrier(s) of Kailey Truck Lines are frequently en route across country, it is not readily apparent in determining where a vehicle will be physically garaged during most of the time period. However, the Court can reasonably conclude the official garaging location of Defendant Kailey's motor carrier(s), when such vehicle(s) are not in service or between routes, is California, where Defendant Kailey maintains his motor carrier registration. Likewise, as in *Accurso,* Defendant Kailey's use of the Hesperia, California, address for purposes of the Policy is dispositive in concluding Hesperia, California, should be considered the primary location of the insured risk.

As in *Accurso*, this Court finds the place of performance is of little relevance to the choice-of-law determination, because as the proceedings for this Motion to Dismiss demonstrate, neither party could know with any certainty where a suit for the enforcement of the Policy might occur at the time of contracting. Likewise, as in *Accurso*, there is nothing to suggest the Policy was not negotiated remotely. Given the lack of evidence in the record, and the parties discord on this point, the Court attributes little weight to the place of negotiations.

Thus, for purposes of choice-of-law analysis, this Court weighs the parties' entry into the Policy in the State of Missouri against the location of the insured risk in California.

Fortunately, Section 6(2) of the Restatement (Second) of Conflicts of Laws provides additional guidance in applying Missouri's choice-of-law rules:

> (2) When there is no such [statutory] directive, the factors relevant to the choice of the applicable rule of law include:
>
> (a)      the needs of the interstate and international systems,
> (b)      the relevant policies of the forum,
> (c)      the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d)      the protection of justified expectations,
> (e)      the basic policies underlying the particular field of law,
> (f)      certainty, predictability and uniformity of result, and
> (g)      ease in the determination and application of the law to be applied.

*Dillard*, 943 S.W.2d. at 715-16. Because the Policy lists the address for the insured risk, Defendant Kailey's motor carrier(s), in Hesperia, California, and the Policy must be interpreted in the context of multiple California Policy riders, this Court concludes California law should be applied in this case. In making this decision, the Court considers the following Restatement factors to be persuasive: 1) the protection of the parties justified expectations; 2) the certainty, predictability and uniformity of the result; and 3) ease in the determination and application of the law to be applied in similar cases.

While the Court acknowledges it is at the juncture where it must follow Missouri choice-of-law rules precisely, because the parties did not contract for a choice-of-law provision in the Policy, the Court finds the importance which Missouri choice-of-law rules attach to the location of the insured risk, coupled with the use of California riders, demonstrates the parties would have a reasonable expectation that California law apply. For example, an excerpt from the "CALIFORNIA CHANGES" Policy rider affirms California is the contemplated location of the insured risk, and notes specific examples of changes in the Policy, made presumably for the purpose of tailoring the Policy to California requirements:

> For a covered "auto" licensed or principally garaged in or "garage operations" conducted in California this endorsement modifies insurance provided under the following:
>
> **BUSINESS AUTO COVERAGE FORM**
> **BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**
> **GARAGE COVERAGE FORM**
> **MOTOR CARRIER COVERAGE FORM**
> **TRUCKERS COVERAGE FORM**
>
> With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

[ECF No. 1, Ex. B, at SPIR 049].

Comment (g) to Restatement Section 6(2) speaks directly to the importance of the parties justified expectations in light of such Policy riders: "Generally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." Restatement (Second) of Conflict of Laws § 6 (1971). Similarly, Comment (i) to Section 6(2) emphasizes the importance of the uniformity and predictability of the result, as well as the need to craft clear rules particularly where, as here, with Defendant Kailey's interstate trucking operation, "the transfer of an aggregate of movables, situated in two or more states, is involved." *Id.* Comment (j) regarding the ease of application of the choice-of-law merely comments on the straightforwardness of this factor as a goal to strive towards. *Id.* All three of these factors rationalize California law as the favorable choice-of-law in light of the Policy's construction.

### C. *Transfer of Venue*

Defendant Kailey seeks transfer to the District Court of Nevada, or alternatively the Central District Court of California, pursuant to 28 U.S.C. § 1404(a) (2012). The statute states "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Considering statutory construction, Section 1404(a) requires the Court to consider (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). However, the Court is not limited to these factors and should consider all other relevant factors on a case-by-case basis. *Id.*; *See Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988).

On these factors, this Court will not transfer this case to either Nevada or California because to do so sacrifices the interests of the other defendants in Plaintiff's Complaint. Neither Defendant Vikram Shah nor Defendant Lisa Vasquez-Kailey has challenged the subject-matter jurisdiction of this Court, and there is no reason to disbelieve these defendants are respectively residents of New York and New Jersey, as alleged in Plaintiff's Complaint. If this case was transferred to California, these Defendants would have to traverse the entire continental United States to defend in a Western forum. Likewise, these defendants' counsel have already sought and attained *pro hac vice* admission in this forum, and this Court is not willing to increase the cost burden on the other two defendants or lengthen the time necessary to defend this case by creating the additional procedural hurdles that such a transfer of venue would cause.

Further, Defendant Kailey and Defendant Vikram Shah are already involved, as defendants, in proceedings in this forum, brought by Lisa Vasquez-Kailey, as plaintiff, in relation to the death of her husband, Gurpreet Kailey. It is appropriate for this Court to withhold transfer to a foreign venue when the operative facts material to this case and the case brought by Lisa Vasquez-Kailey are substantially the same and when Defendant Kailey is already subject to proceedings in this state.

Likewise, the Court notes a change of venue in a diversity case would result in application of that forum's laws:

> When a diversity case is transferred from one federal court to another, the choice of law depends on the nature of the transfer. Transfer is allowed under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses, and the chance for unfair prejudice or forum shopping is minimized because the district court is required to consider the interests of all involved in deciding whether to allow a transfer. With a § 1404(a) transfer the law of the transferor court applies. . .

*Wisland v. Admiral Beverage Corp.*, 119 F.3d 733, 735-36 (8th Cir. 1997).

While the Court notes transfer to the District Court of Nevada might be convenient for Plaintiff and Defendant Kailey, apart from the distance such a transfer would impose on the other named Defendants, transferring the case to the District of Nevada would result in the application of Nevada law, contrary to this Court's finding California law appropriately governs the interpretation of the Policy in the absence of a choice-of-law clause.

Accordingly, any transfer to either the Central District Court of California or the District Court of Nevada is inappropriate.

**IT IS HEREBY ORDERED** that Defendant MIKE KAILEY dba KAILEY TRUCK LINES' Motion to Dismiss the Complaint or, in the Alternative, to Transfer Venue to the District of Nevada is **DENIED**.

So Ordered this 8th Day of March, 2016.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE