# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| SPIRIT COMMERCIAL AUTO RISK RETENTION GROUP, INC., | ) ) ) | |
| Plaintiff(s), | ) ) | |
| v. | ) ) | No. 4:15CV01091 ERW |
| MIKE KAILEY, et al., | ) ) ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Spirit Commercial Auto Risk Retention Group, Inc.'s Motion for Summary Judgment [ECF No. 63], Lisa Vazquez-Kailey's Motion for Summary Judgment [ECF No. 67], and Mike Kailey's Motion for Summary Judgment [ECF No. 74].

## I.  BACKGROUND

On July 14, 2015, Plaintiff Spirit Commercial Auto Risk Retention Group, Incorporated ("Spirit") filed a complaint for declaratory judgment against Defendants Lisa Vazquez-Kailey ("Vazquez-Kailey"), Mike Kailey doing business as Kailey Truck Line ("Kailey"), and Vikram Shah ("Shah"), asking this Court to determine if Spirit is required to defend or indemnify Kailey and Shah in connection with any claims asserted against them in a separately filed lawsuit pursuant to an auto liability insurance policy issued by Spirit to Kailey.[1] The underlying lawsuit in this matter was filed by Vazquez-Kailey against Kailey and Shah on March 13, 2015, and is presently pending before Judge Ronnie L. White in this District.[2]

---

[1] Shah has not responded to the lawsuit and has not participated in these motions.
[2] The underlying lawsuit is *Vazquez-Kailey v. Shah*, 4:15-CV-00467 RLW.

In this matter, the parties have filed three summary judgment motions, all requesting the Court determine whether the auto liability insurance policy ("the policy") covers the claims in the underlying lawsuit. The undisputed facts are as follows.

Gurpreet Kailey ("the decedent"), husband of Vazquez-Kailey, was killed in a vehicle collision on April 20, 2014. ECF No. 69, ¶ 1; 76 ¶ 1. The decedent was a passenger in the sleeper berth of a commercial tractor-trailer, owned by Kailey and driven by Shah. ECF No. 69, ¶ 1; 76 ¶ 1. In 2015, Vazquez-Kailey brought a lawsuit against Kailey and Shah alleging negligent selection and retention of an independent contractor, negligent entrustment, and negligence for the death of the decedent. ECF No. 69, ¶ 2; 76 ¶ 2. At the time of the collision, Kailey was insured under the policy, No. CAC0001201402CA, issued by Spirit, for the time period March 21, 2014, to March 21, 2015. ECF No. 64 ¶ 8; 75¶ 8; 69, ¶ 3; 76 ¶ 3. The policy included coverage for the tractor and trailer operated by Shah at the time of the collision. ECF No. 69, ¶ 4; 76 ¶ 4. The policy contains a general grant of coverage and two exclusions at issue in this matter. ECF No. 69, ¶¶ 5, 8; 76 ¶¶ 5, 8. It also contains a MCS-90 Endorsement.[3] ECF No. 69, ¶ 11; 76 ¶ 11.

Kailey Truck Line ("KTL") is an assumed name for a motor carrier sole-proprietorship owned by Kailey that hauls vegetables from California to New York and household goods from the East coast to California. ECF No. 69, ¶¶ 13, 14; 76 ¶¶ 13, 14. The home office is located in Las Vegas, Nevada, but Kailey used a friend's California address to secure cheaper license plates for his commercial trucks. ECF No. 69, ¶ 16; 76 ¶ 16. In April 2014, KTL had six or seven drivers. ECF No. 69, ¶ 17; 76 ¶ 17. Most drivers were paid by the trip; some were paid by mileage. ECF No. 69, ¶ 19; 76 ¶ 19. All KTL drivers operated under Kailey's Department of

---

[3] The history of, and what a MCS-90 Endorsement is, is discussed by the Court *infra*.

Transportation number. ECF No. 69, ¶ 21; 76 ¶ 21.

The decedent began working for Kailey in July 2013 and Shah began in September or October 2013. ECF No. 69, ¶¶ 24,27; 76 ¶¶ 24, 27. Shah and the decedent drove regular routes together as a driving team in the same truck. ECF No. 64, ¶ 4; 75 ¶ 4. They each entered into a Driver/Carrier Agreement with Kailey. ECF No. 69, ¶¶ 29, 30; 76 ¶¶ 29, 30. The agreements provided: the driver would pay a $1,000 deductible in the event of an accident; the driver would be charged $0.60 per mile for leaving an assigned area without being dispatched; the driver could not use KTL checks or comcards for personal use without prior authorization; the driver was responsible for the load, cargo invoices, costs associated with overheating, freezing or other damage, and for replacing any KTL equipment lost, stolen, misplaced, or damaged; KTL was not responsible for costs incurred during layover periods, including motels or food; each driver was responsible for paying all FICA, social security taxes, and other employment-related taxes to federal and state governments, but KTL would provide at 1099 at the end of a year; and drivers must give two weeks' notice upon termination of the agreement. ECF No. 64, ¶ 22; 69, ¶ 32; 76 ¶ 32. These agreements were intended to be the entire agreement between the driver and KTL, there were no other contracts. ECF No. 69, ¶¶ 31, 34; 76 ¶¶ 31, 34.

Beyond having a commercial driver's license and a road test, KTL drivers had to pass any insurance guidelines. ECF No. 69, ¶ 39; 76 ¶ 39. KTL did not carry workers' compensation coverage. ECF No. 69, ¶ 36; 76 ¶ 36. Kailey and Shah both believe driving a truck requires a certain degree of skill. ECF No. 69, ¶ 40; 76 ¶ 40. KTL's business depended on the drivers' ability to move freight; it was integral to the business. ECF No. 64, ¶ 26; 75 ¶ 26.

Shah did not know the difference between an employee and an independent contractor and does not recall Kailey referring to him as either term. ECF No. 69, ¶¶ 45, 46; 76 ¶¶ 45, 46.

Kailey stated in his deposition the drivers were independent contractors. ECF No. 74, ¶ 23; 82 ¶ 23. He also stated when drivers were not driving a load for him, they can work with someone else without asking his permission, because they are their own bosses. ECF No. 74, ¶ 24; 82 ¶ 24.

Kailey did not have any separate company policies on driving time beyond federal regulations. ECF No. 69, ¶ 50; 76 ¶ 50. Drivers turned in the logbooks for review by Kailey, who reviewed them to confirm they did not drive over the hours allowed, slept while off-duty, conducted vehicle inspections, and complied with other government regulations. ECF No. 38, ¶ 4; 69, ¶ 51; 75 ¶ 38; 76 ¶ 51. After each trip, Kailey would collect from the drivers weigh tickets, bills of lading, log books, vehicle inspection reports, and receipts for maintenance expenses. ECF No. 64, ¶ 39; 75 ¶ 39. He would also speak with them regarding following the rules if a company policy had not been followed. ECF No. 64, ¶ 40; 75 ¶ 40. The practice was to give verbal and written warnings before termination for log book violations. ECF No. 64, ¶ 41; 75 ¶ 41.

Drivers did not receive any paid leave, only unpaid leave. ECF No. 69, ¶ 53; 76 ¶ 53. Shah would notify Kailey in advance if he was going to take time off for vacation. ECF No. 64, ¶ 42; 75 ¶ 42. A driver could refuse to take a given load at any time without fear of losing additional loads. ECF No. 69, ¶ 54; 76 ¶ 54. Payment was made per trip. ECF No. 69, ¶ 56; 76 ¶ 56. If a truck broke down causing a delay, drivers were not paid extra for any lost time. ECF No. 69, ¶ 58; 76 ¶ 58. The decedent and Shah purchased their own global positioning system, which was not monitored by Kailey. ECF No. 69, ¶¶ 61, 62; 76 ¶¶ 61, 62. Kailey had not charged a driver for leaving an assigned area in seventeen years. ECF No. 69, ¶ 63; 76 ¶ 63.

Drivers could keep trucks wherever they were; the decedent kept the truck he used near his apartment. ECF No. 69, ¶¶ 64, 65; 76 ¶¶ 64, 65. Drivers were required to check in with

Kailey every morning and evening and in the case of an emergency. ECF No. 64, ¶ 30; 75 ¶ 30. Drivers could be charged $25 for failing to call and check in. ECF No. 69, ¶ 66; 76 ¶ 66. During these calls, Kailey would ask the drivers how they were doing, where they were, and how the vehicle was operating. ECF No. 64, ¶ 30; 75 ¶ 30. Drivers would call Kailey when the trucks needed repairs. ECF No. 69, ¶ 70; 76 ¶ 70. Kailey would also advise the drivers on which route was better based on the weather. ECF No. 64, ¶ 28; 75 ¶ 28. Kailey paid for all fuel and repair expenses for the trucks, and if drivers used their own funds, they would be reimbursed. ECF No. 69, ¶ 71; 76 ¶ 71. Drivers were given a credit card for fuel expenses for use at Pilot and Flying J stations which could not be used at any other gas station. ECF No. 64, ¶ 36; 75 ¶ 36. Shah and the decedent performed routine maintenance such as oil changes, brake repairs, adding new tires, and kept a maintenance log for Kailey. ECF No. 64, ¶ 37; 75 ¶ 37.

The three summary judgment motions filed all concern the same issues which focus on whether the decedent and Shah were employees or independent contractors of KTL.

**II.  STANDARD**

A court shall grant a motion for summary judgment only if the moving party shows "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). By definition, material facts "might affect the outcome of the suit under the governing law," and a genuine dispute of material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a

complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The moving party bears the initial burden of proof in establishing "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence and specific facts demonstrating a genuine dispute on the specific issue. *Anderson*, 477 U.S. at 250. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing a genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). The non-moving party must demonstrate sufficient favorable evidence that could enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.* The Court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009).

### III.  DISCUSSION

The policy issued by Spirit to Kailey generally covers all damages due to bodily injury or property damage caused by an accident resulting from the ownership, maintenance, or use of a covered auto. The policy states Spirit will defend any insured against a suit asking for such damages to which the policy applies. The policy excludes from coverage any bodily injury to an employee or fellow employee of the insured arising out of and in the course of employment of the insured.[4] Therefore, if the decedent qualifies as an employee of Kailey, then Spirit has no duty to defend or indemnify Kailey in the underlying suit. Spirit asserts the undisputed facts show the decedent was an employee of Kailey, while Vazquez-Kailey and Kailey assert he was an independent contractor.

A.  *The applicable law*

California law governs as to interpretation of the policy in this matter.[5] Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (Cal. 2003). When an issue of coverage arises, the burden is on the insured to prove facts establishing the claimed loss is within the coverage. *Vardanyan v. AMCO Ins. Co.*, 243 Cal. App. 4th 779, 796 (Cal. Ct. App. 2015). Once this has been shown, the burden is on the insurer to prove the claim is excluded. *Id*.

A contract must be interpreted to give effect to the mutual intention of the parties at the time the contract was formed. Cal. Civ. Code § 1636; *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 666 (Cal. 1995). If possible, intent should be inferred from the written provisions of the contract. Cal. Civ. Code § 1639; *Montrose*, 10 Cal. 4th at 666. The words of a

---

[4] The parties agree the truck at issue in this matter is a covered auto under the policy and the decedent's injury occurred in the course of employment. Kailey, doing business as KTL, is the insured of the policy.

[5] The Court previously determined the applicable state law was California in its Memorandum and Order on Defendant Kailey's Motion to Dismiss, ECF No. 33, after conducting a choice-of-law analysis.

7

contract are to be understood in their ordinary and popular sense. Cal. Civ. Code § 1644. The whole of a contract is to be taken together, giving effect to every part, if reasonably practicable. Cal. Civ. Code § 1641. In cases of uncertainty, the contract should be interpreted against the party who caused the uncertainty to exist. Cal. Civ. Code § 1654.

With these rules in mind, the Court must interpret the policy and determine if coverage is provided for the underlying suit. All parties agree the policy excludes coverage for bodily injury to employees. Spirit asserts the decedent is an employee for two reasons. First, Spirit argues the federal Motor Carrier Act of 1980 ("MCA") and its regulations, which include independent contractors in the definition of employee, apply to this policy, because it includes a MCS-90 endorsement and the parties intended to comply with the MCA. Thus, according to Spirit, whether decedent is an employee or independent contractor under state law has no impact, because the MCA considers him an employee. Second, Spirit contends even if the MCA definition is not applied to the policy, the decedent is an employee under state law. Vazquez-Kailey and Kailey assert the MCA does not change the definition of employee in the policy and the uncontroverted facts show the decedent was an independent contractor.

    B.    *Federal Motor Carrier Act*

The MCA was enacted to deregulate the trucking industry, increase competition, reduce entry barriers, and improve quality of service. *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 873 (10th Cir. 2009). To protect against abuses in the trucking industry, which threatened public safety, the MCA and its regulations require interstate motor carriers to obtain a special endorsement. *Id.* at 873-874. This endorsement provides "the insurer will pay within policy limits any judgment recovered against the insured motor carrier for liability resulting from the carrier's negligence, whether or not the vehicle involved in the accident is specifically described

8

in the policy." *Id*. at 874. The MCA also requires a motor carrier to be registered and comply with minimum financial responsibility requirements. *Id*. A motor carrier can establish proof of the requisite financial responsibility through an MCS-90 endorsement which is set forth in 49 C.F.R. § 387.15. *Id*. The policy at issue contains an MCS-90 endorsement.

Federal regulations for the MCA define employee as "any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety." 49 C.F.R. § 390.5. This includes an "independent contractor while in the course of operating a commercial motor vehicle." *Id*. The policy's definition of employee is not as broad as the regulation. The policy's only definition addressing "employee" states "employee includes a leased worker. Employee does not include a temporary worker." (internal quotations omitted). ECF No. 64-3, pg. 23.

The MCS-90 endorsement "is ambiguous with respect to how it interacts with the underlying insurance policy." *Id*. at 875. Courts across the country have taken vastly different approaches to the issue. According to the Tenth Circuit Court of Appeals in 2009, the majority of circuit courts concluded a MCS-90 endorsement is a surety rather than a modification of the policy. *Id*. at 878 (citing to cases from the 6th, 3rd, 4th, 5th, 9th, and 7th circuits). The majority of case law also holds the endorsement is only implicated between an injured member of the public and the MCS-90 insurer and does not alter the relationship between the insurer and the insured as otherwise provided in the policy. *Id*. at 878-879. It does not relieve the motor carrier or its insurers of their duty to satisfy an injured party's judgment. *Id*. at 879.

In *Global Hawk Insurance Company v. Le*, the California appellate court held definitions used in the MCA do not supplant the definitions in an insurance policy, especially when it would displace an insurer's obligation to pay a covered claim. 225 Cal. App. 4th 593, 608 (Cal. Ct.

9

App. 2014); *see also Amerigas Propane, LP v. Landstar Ranger, Inc.*, 184 Cal. App. 4th 981, 998 (Cal. Ct. App. 2010). The Seventh Circuit Court of Appeals agrees, finding the MCS-90 endorsement does not modify the terms of the policy. *Auto-Owners Ins. Co. v. Munroe*, 614 F.3d 322, 327 (7th Cir. 2010). However, the Fifth Circuit Court of Appeals, and several district courts, have held the definitions in the MCA and its regulations do apply to insurance policies. *Consumers Cty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 366-67 (5th Cir. 2002); *Barnett v. Bullock*, No. 12-CV-326-JWD-SCR, 2015 WL 58869 at *4 (M.D. La. 2015); *Lopez v. Canal Ins. Co.*, 2015 WL 5097358 at *4 (W.D. Tex. 2015).

This Court finds the Tenth and Seventh Circuit's opinions to be more persuasive. The protections required by the MCA in an MCS-90 endorsement are meant to act as a surety to protect the public in instances where a motor carrier's insurance is found lacking. The definitions promulgated as a result of the MCA do not change the underlying insurance policy unless explicitly stated in the policy. The Court will not apply the MCA definition of employee to the exclusion clause in this policy. Therefore, the Court must determine whether the decedent was an employee or independent contractor under California state law.

C.  *California Law*

In California, the principal test of the employment relationship was "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 341, 350 (Cal. 1989). However, in *S.G. Borello & Sons, Incorporated*, the California Supreme Court held while this is still a significant consideration, there other factors which can indicate the nature of the relationship. *Id.* These factors include: (1) the right to discharge at will, without cause; (2) the kind of occupation, whether the work is usually done under the direction of a principal or

without supervision; (3) if the individual is engaged in a distinct occupation or business; (4) the skill required in the particular occupation; (5) who supplies the instrumentalities, tools, and the place of work; (6) the length of time the services are performed; (7) the method of payment – by time or by job; (8) if the work is part of the regular business of the principal; and (9) the relationship the parties believed they were creating. *Id*. at 351. Ordinarily, whether a person is an employee or independent contractor is a question of fact, but if only one inference may be drawn, it is a question of law. *Brose v. Union-Tribune Publ'g Co.*, 183 Cal. App. 3d 1079, 1081 (Cal. Ct. App. 1986).

The appellate courts in California have issued several opinions determining whether a person is an employee or independent contractor. In *Toyota Motor Sales U.S.A., Inc. v. Superior Court*, the issue was whether a pizza driver was an employee. 220 Cal. App. 3d 864, 877 (Cal. Ct. App. 1990). The California appellate court determined the individual was an employee, because (1) he was subject to the employer's total control over all aspects of his job including when he reported to work, how long he worked, when he made deliveries, and to whom, (2) there was no risk to the individual, whose only responsibility was to deliver the pizza, collect the money and return, and (3) the employer retained the express contractual right to terminate the relationship at any time without cause. *Id*. In *City of Los Angeles v. Meyer Brothers Parking System, Incorporated*, the appellate court determined the company operating a parking facility was an independent contractor of the City of Los Angeles, because the company provided overall management and supervision of the facility, employed all personnel needed and oversaw their work, provided all equipment and supplies and kept them in the proper maintenance, and obtained the insurance needed for the facility, even though the City reimbursed them for many of these costs. 54 Cal. App. 3d 135, 138 (Cal. Ct. App. 1975).

With these cases in mind, the Court turns to the facts of this case. The key facts needed to make the determination of whether the decedent was an employee or independent contractor are undisputed. The facts supporting the drivers being employees are: (1) drivers could be charged for leaving an assigned area; (2) KTL's business depended on the drivers' ability to move freight, thus, the drivers were integral to the business; (3) drivers turned in logbooks for review by Kailey; (4) drivers were required to check in with Kailey every morning and evening; (5) Kailey provided the trucks and paid for all fuel and repair expenses; (6) drivers were required to notify Kailey in advance if they wished to take time off for any reason; and (7) drivers were required to provide two weeks' notice upon termination of the contract.

The facts in favor of drivers being independent contractors are: (1) driving a truck requires a certain amount of skill and requires a special license; (2) drivers are responsible for the load and any costs associated with overheating, freezing or other damage to the load; (3) drivers are responsible for replacing any equipment lost, stolen, misplaced or damaged; (4) each driver is responsible for paying taxes and KTL would provide a 1099 statement at the end of the year; (5) KTL did not carry workers' compensation coverage; (6) Kailey believed his drivers were independent contractors; (7) drivers were permitted to work for other companies when not working for him; (8) drivers did not receive any paid leave; (9) a driver could refuse to take a load at any time without recourse; and (10) payment was made per trip.

The Court finds the factors weigh in favor of drivers being independent contractors. Particularly persuasive are the facts drivers were paid per trip and were permitted to work for other companies. Because the Court finds drivers and the decedent were independent contractors, the decedent's injuries do not qualify under the employee exclusion of the policy. Therefore, the general coverage clause of the policy applies and Spirit has a duty to defend and indemnify

Kailey in the underlying lawsuit.

Accordingly,

**IT IS HEREBY ORDERED** that Spirit Commercial Auto Risk Retention Group, Inc.'s Motion for Summary Judgment [ECF No. 63] is **DENIED**.

**IT IS FURTHER ORDERED** that Lisa Vazquez-Kailey's Motion for Summary Judgment [ECF No. 67] is **GRANTED**.

**IT IS FURTHER ORDERED** that Mike Kailey's Motion for Summary Judgment [ECF No. 74] is **GRANTED**.

**IT IS FURTHER ORDERED** that judgment shall be granted in favor of Lisa Vazquez-Kailey and Mike Kailey, and against Spirit Commercial Auto Risk Retention Group, Incorporated.

Dated this 10th Day of July, 2017.

*E. Richard Webber*

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE